UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LLOYD JACKSON,

  Petitioner,

                                          CASE NO. 4:12-CV-11463

  v.                               HONORABLE GERSHWIN A. DRAIN
                                           UNITED STATES DISTRICT COURT

KATHLEEN OLSEN,

  Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [20] AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

Michael Lloyd Jackson, ("Petitioner" or "Jackson"), incarcerated at the Ojibway Correctional Facility in Marenisco, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 20. In his application, filed *pro se*, Petitioner challenges his conviction for felon in possession of a firearm, Mich. Comp. Laws § 750.224f; possession of a short-barreled shotgun, Mich. Comp. Laws § 750.224b; and two counts of possession of a firearm in the commission of a felony ("felony-firearm"), Mich. Comp. Laws § 750.227b. For the reasons stated below, the petition for writ of habeas corpus is **DENIED**. Accordingly, the Court will also **DENY** Petitioner's Request for a Certificate of

1

Appealability and Leave to Appeal *In Forma Pauperis*.

## I. Background

Petitioner was convicted following a jury trial in the Bay County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). The Michigan Court of Appeals stated:

> This case has its origins in an apparent altercation between several men at a residence in the early morning hours of July 4, 2008, in Bay City, Michigan.
>
> James Lyman testified that he was a police officer with the Bay City police department. Lyman stated that he responded to a dispatch concerning a fight that possibly involved a firearm. As he drove toward the area indicated in the dispatch, he saw three men headed away from him and toward 11th Street and another three men headed toward his car. Lyman stopped his car, exited, and ordered the three men approaching him to the ground. Lyman agreed that defendant was yelling and excitable at the scene and that he said something to the effect that those other guys were "swingin' on some girls," which he understood to mean striking them. Because the three men would not comply with his order, he drew his gun and repeated his order. Eventually, the three men got on the ground.
>
> Officer John Harned testified that he was following Lyman on the way to the scene. He saw Lyman pull over next to three men. He, however, proceeded past Lyman and drove towards the three men who were walking away. The three men ran to the west and he lost them. Harned testified that all three of the men that ran away were wearing white t-shirts. After he lost sight of the three men, Harned went back to the point where Lyman stopped and helped him secure

the scene.

Officers Leslie Gillespie and Brad Peter testified that they too responded to the dispatch. When she arrived, Gillespie saw that Lyman had three suspects on the ground at gun point. She assisted officer Lyman in handcuffing the suspects. When Peter arrived, Lyman and Gillespie had already secured the three suspects. Gillespie also noticed that a car was parked somewhat "cock-eyed into a driveway"; part of the car was "in the road, part was up into the driveway." She said she recognized the car from a stop that she had made two weeks earlier and that the car belonged to defendant. She said the car was running, had its lights on, and the front driver's side door was open. She also said that defendant had some injuries to his face—his eye was swollen.

Dawn Harsch testified that she lived next door to the home at issue. In the early morning hours of July 4, 2008, she heard "a lot of yelling" and so she looked outside. She saw a taller black man with a gun. The man started to take off his shirt and passed the gun to a shorter black man. The shorter black man then took the gun and stuck it in her yard. She stated that the shorter black man had a shirt on. Harsch told her husband to call 9–1–1, but the police arrived even before he could call. She then got her robe and went outside to tell an officer where the gun was located.

Officer Peter said that a neighbor approached him at the scene and spoke to him. After he spoke with her, Peter searched the bushes near the woman's home next to a fence. There he found a small sawed-off shotgun. Peter said that the neighbor indicated that the man with no shirt had had the shotgun. Defendant had no shirt on. The other two men detained at the scene, Cory Jackson—defendant's brother—and Malcolm Baty, both had shirts on. Harned said that he found a t-shirt lying in the driveway just south of where they located the gun. Harned noted that defendant was the only person at the scene who did not have a shirt on.

. . . .

At trial, the prosecutor asked Harsch whether an officer had asked her if she could identify the man who had the gun and she testified that "he did." The prosecutor then asked her whether she pointed to one of the men in custody and she said, "no." The prosecutor later called Officer Peter to the stand and asked him whether he had asked Harsch if she could identify the man who had the shotgun at the scene and he stated that he did. When the prosecutor asked what she did or said, defendant's trial counsel objected to the question because it asked for hearsay. The prosecutor responded that he was offering the testimony as a prior inconsistent statement because Harsch had testified that she did not identify defendant as the taller black man who had the shotgun. See MRE 801(d)(1)(A). The trial court agreed that the testimony was admissible for that purpose. At that point, Peter testified that, after he asked Harsch if she could identify the man with the shotgun, she "pointed to the black male subject who was on the ground who had no shirt on." Defendant's trial counsel then cross examined Peter about the circumstances under which Harsch pointed out defendant and noted that she might simply have pointed to him because he was the only man left who was not wearing a shirt.

After defendant's trial counsel made his motion for a directed verdict, the prosecutor asked the trial court to instruct the jury that Peter's testimony that Harsch pointed to defendant could be used as substantive evidence that defendant possessed the shotgun, rather than just evidence of a prior inconsistent statement. The trial court agreed that it was admissible for that purpose under MRE 801(d)(1)(C) and later instructed the jury that it could use the testimony as evidence that defendant possessed the shotgun.

*People v. Jackson*, No. 294112, 2011 WL 192390, at *1–2, 9–10 (Mich. Ct. App. Jan. 20, 2011).

Petitioner's conviction was affirmed on appeal by the Michigan Court of Appeals, although the case was remanded to the trial court to amend the judgment of sentence to reflect the correct amount of credits for time served. *Id.* at *1.

Petitioner did not file an application for leave to appeal to the Michigan Supreme Court. *See* Aff. of Corbin R. Davis, Clerk of the Michigan S. Ct., dated July 24, 2012. Dkt. No. 7-15.

Jackson filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was held in abeyance to permit him to return to the state courts to exhaust additional claims which had not yet been presented to the state courts. *Jackson v. Smith*, No. 4:12-CV-11463, 2013 WL 2447783 (E.D. Mich. June 5, 2013), Dkt. No. 15.

Petitioner filed a post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Jackson*, No. 08-10666-FH (Bay Cty. Cir. Ct. July 1, 2013), *reconsideration denied*, No. 08-10666-FH (Bay Cty. Cir. Ct. July 31, 2013). The Michigan appellate courts denied Jackson leave to appeal. *People v. Jackson*, No. 318547 (Mich. Ct. App. Mar. 17, 2014), *leave denied*, 497 Mich. 903, 856 N.W.2d 35 (2014).

On September 12, 2016, this Court reopened the case to the Court's active docket, amended the caption, and permitted Petitioner to file an amended habeas petition. *See* Dkt. No. 21.

In his original habeas application, Petitioner sought relief on the following grounds:

I.     There was insufficient evidence that he possessed the shotgun, so as to support his conviction.

II.    There was insufficient evidence to convict him on the felon in possession of a firearm charge because there was no requisite felony, and Petitioner's counsel was ineffective for stipulating that there was a requisite felony.

III.   The trial court violated his due process rights when it admitted a police officer's testimony about another witness's statement of identification, where there was no proper identification procedure.

Dkt. No. 1, p. 17 (Pg. ID 17).  In his amended habeas application, Petitioner raises

additional claims, which this Court will number as claims four through six:

IV.    His conviction for felon in possession of a firearm violated the Ex Post Facto Clause and the Due Process Clause.

V.     He was denied the effective assistance of appellate counsel where his attorney did not raise issues in his appeal as of right.

VI.    He was denied the effective assistance of trial counsel because trial counsel stipulated to a prior conviction that allegedly did not exist.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law where (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law"; or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court then,

state prisoners must show that the state court's rejection of their claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should not obtain relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

## III. Discussion

### A. Claims One and Two: Sufficiency of the Evidence

Petitioner first contends that there was insufficient evidence to convict him. The Court disagrees.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable

doubt." *Id.* at 334 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (internal citation omitted).

Significantly, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). Rather, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *Id.* "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or reevaluate the credibility of witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the

factfinder, here the state trial court, to weigh the probative value of the evidence and resolve any conflicts in the testimony." *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992) (citing *Jackson*, 443 U.S. at 319). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003). The Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F. 3d 472, 475 (6th Cir. 1995).

Petitioner's initial claim is that there was insufficient evidence to establish that he handled the shotgun. Petitioner further asserts that even if the evidence demonstrated he temporarily handled the shotgun, this was insufficient to prove that he unlawfully possessed the shotgun as a matter of law.

The Michigan Court of Appeals rejected Petitioner's claim, concluding:

> Here, Harsch testified that she looked outside after she heard "a lot of yelling" and saw a taller black man with a gun. She said that the taller man walked to the driveway near her house and, as he started to take off his shirt, he passed the gun to a shorter black man. The shorter man then took the gun and stuck it in her yard. Other testimony and evidence established that a short-barreled shotgun was found where Harsch saw the shorter black man place the gun.

> This evidence was sufficient to establish that the taller black man actually or constructively possessed the shotgun. Harsch stated that she saw the taller black man holding the gun and that he passed it to the shorter man after he began to take his shirt off. From this testimony, a reasonable jury could infer that the taller black man had actual possession of the shotgun—even if momentary—and only

passed it to the shorter man because he could not continue to hold the weapon while removing his shirt. Further, a reasonable jury could also conclude that the shorter man took possession at the taller man's direction and, from that, could also find that the taller man continued to have constructive possession even after he passed the weapon to the shorter man. Thus, if there was sufficient evidence to establish that defendant was the taller black man, then there was also sufficient evidence to establish that defendant possessed the shotgun.

Although Harsch did not identify defendant as the taller black man at trial, her testimony established that the taller black man took off his shirt. She also stated that the shorter black man had his shirt on and that the police arrived on the scene just moments after she saw the taller man hand the shotgun to the shorter man. Lyman testified that when he arrived on the scene there were three black men approaching his car and three walking away. Lyman stopped the three men who were approaching his car. He noted that defendant was among the three men and that he was the only person who had no shirt. The officers also found a t-shirt on the driveway. Harned testified that he passed Lyman and pursued the three men who were moving away. Although he did not apprehend those men, Harned stated that all three had white t-shirts on.

Given the evidence that the police arrived on the scene shortly after Harsch observed the episode with the gun, a reasonable jury could infer that all the participants in the altercation were in or near the yard at the time the police arrived. Because the officers' testimony established that defendant was the only man of the six observed at the scene who did not have on a shirt, the jury could reasonably infer that defendant was the taller black man that Harsch saw with the shotgun. Therefore, there was sufficient evidence to establish that defendant possessed the shotgun at issue. The trial court properly denied defendant's motion for a directed verdict premised on the sufficiency of the evidence.

*Jackson*, 2011 WL 192390, at *3 (internal footnote and citation omitted).

Additionally, the Michigan Court of Appeals determined that under Michigan law

"momentary innocent possession is not a defense to being a felon-in-possession."
*Id.* at *3 n.1 (citing *People v. Hernandez–Garcia*, 477 Mich. 1039, 728 N.W.2d
406, 406 (2007); *People v. Dupree*, 284 Mich. App. 89, 771 N.W.2d 470, 478 n.1
(2009)).

Petitioner also argues there was insufficient evidence to establish that he
was the taller man, whom Ms. Harsh identified, in possession of the shotgun. This
argument lacks merit.

Under Michigan law, "[t]he identity of a defendant as the perpetrator of the
crimes charged is an element of the offense and must be proved beyond a
reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003) (citing
*People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).
"Circumstantial evidence alone is sufficient to support a conviction, and '[i]t is
not necessary for the evidence to exclude every reasonable hypothesis except that
of guilt.'" *Johnson v. Coyle*, 200 F. 3d 987, 992 (6th Cir. 2000) (quoting *United
States v. Reed*, 167 F.3d 984, 992 (6th Cir. 1999)). "Identity of a defendant can be
inferred through circumstantial evidence." *Dell v. Straub*, 194 F. Supp. 2d 629,
648 (E.D. Mich. 2002) (citing *United States v. Kwong*, 14 F.3d 189, 193 (2nd Cir.
1994)).

Here, there was enough circumstantial evidence to establish that Petitioner

was the taller African-American male who initially handled the shotgun.  Ms. Harsch saw the taller man and observed that he was in possession of a shotgun. This man removed his shirt while passing the shotgun to a shorter man, and the shorter man placed the weapon in Ms. Harsch's yard.  Moments later, the police found the shotgun in Ms. Harsch's yard.  When Officer Lyman arrived on the scene, he saw three African-American males walking toward his car and three men walking away from the scene.  Officer Lyman stopped the three men approaching his car.  He testified that Petitioner was the only man not wearing a shirt, and a t-shirt was discovered in the driveway.  Officer Harned passed the three men walking away from the scene and observed that they all were wearing shirts.  Finally, although Ms. Harsch at trial did not identify Petitioner as the taller man at the crime scene, Officer Peters testified that while at the scene he had asked Ms. Harsch to identify the man with the shotgun, and she pointed to Petitioner, the only man on the ground not wearing a t-shirt.

Given that Jackson was the only shirtless person at the crime scene and was identified by Ms. Harsch at the scene, a rational trier of fact could conclude that Jackson was the man Ms. Harsch observed handing the shotgun to the shorter man.

Petitioner argues that the state court determination is erroneous because

certain defense witnesses testified that other men walking in the vicinity had their shirts off. *See* Dkt. No. 7-6, Tr. 4/29/09, p. 115, 136 (Pg. IDs 384, 405). The Court finds this argument unavailing.

A federal court sitting on habeas corpus "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos*, 565 U.S. at 7 (quoting *Jackson*, 443 U.S. at 326). Because the evidence must be viewed in the light most favorable to the prosecution, it is reasonable to conclude that the jury disregarded the defense witnesses' testimony and determined Petitioner was the only person at the crime scene not wearing a shirt. *See, e.g., United States v. Elder*, 90 F.3d 1110, 1122 (6th Cir. 1996) (construing evidence in light most favorable to the prosecution and holding jury disregarded testimony of defendant and defense witnesses in favor of testimony from co-conspirator regarding defendant's involvement in criminal organization).

Petitioner also argues there was insufficient evidence to overcome his defense that his temporary handling of the shotgun did not constitute illegal possession of the shotgun. This argument lacks merit.

"The elements of felony-firearm are that [the defendant] possessed a

firearm while committing, or while attempting to commit, a felony offense." *See Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007) (citing Mich. Comp. Laws § 750.227b). The elements of felon in possession of a firearm in Michigan are: "that (1) [the defendant] was convicted of a felony; (2) [the defendant] possessed a firearm; and (3) at the time of possession, less than three or five years, depending on the underlying felony, passed since [the defendant] had completed his previous term of incarceration, satisfied all conditions of probation and parole, and paid all fines." *Id.* (citing Mich. Comp. Laws § 750.224f). To convict Petitioner of possessing a short-barreled shotgun, the prosecution had to prove that he actually or constructively possessed a short-barreled shotgun. *People v. Hill*, 433 Mich. 464, 446 N.W.2d 140, 142–43 (1989). A "short-barreled shotgun" includes a shotgun that has one or more barrels less than eighteen inches in length. *Id.* at 143 n.5 (citing what is now Mich. Comp. Laws § 750.222(i)).

Under Michigan law, possession of a firearm can be either actual or constructive. *Parker*, 506 F.3d at 448 (citing *Hill*, 446 N.W.2d at 143). Specifically, "a person has constructive possession if there is proximity to the [weapon] together with indicia of control." *Id.* (quoting *Hill*, 446 N.W.2d at 143.) "Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant."

*Id.* at 448 n.3 (quoting *Hill*, 446 N.W.2d at 143). "As applied, 'reasonable access' is best calibrated to instances where a defendant commits a crime emboldened by a firearm available, but not in hand." *Id.* "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.* at 449 (quoting *United States v. Craven*, 478 F. 2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977)) (construing Michigan law).

In this case, there was sufficient evidence to establish that Petitioner possessed the shotgun, so as to support his convictions. He was seen handling the shotgun before giving it to another man, who hid it in Ms. Harsch's yard. The state court concluded Petitioner's momentary possession of the shotgun was sufficient to support his convictions; it held that "momentary innocent possession is not a defense to being a felon-in-possession." *Jackson*, 2011 WL 192390, at *3 n.1 (citing *People v. Hernandez–Garcia*, 477 Mich. 1039, 728 N.W.2d 406, 406 (2007); *People v. Dupree*, 284 Mich. App. 89, 771 N.W.2d 470, 478 n.1 (2009)). Although the court did not explicitly mention the felony-firearm or short-barreled shotgun charges, the court's statement shows that momentary possession of the shotgun is not a defense to these charges.

"[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). "[S]tate courts are the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). "What is essential to establish an element, like the question whether a given element is necessary, is a question of state law." *Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)). Moreover, a federal court on habeas corpus must distinguish a sufficiency of evidence claim from state law claims disguised as *Jackson* claims. *Id.* (citing *Bates*, 934 F.2d at 102). Thus, "when a habeas petition is predicated upon just one of several plausible interpretations of underlying state law, federal courts have declined to review state convictions on insufficiency-of-evidence grounds." *Jenkins v. Dailey*, 348 F. App'x 114, 119 (6th Cir. 2009).

This Court must therefore defer to the Michigan Court of Appeals' construction of the elements of state crimes. *See Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998). As the Michigan Court of Appeals concluded that Petitioner's momentary possession of the shotgun was sufficient to establish the elements of the various firearms offenses, this Court cannot revisit that determination. Accordingly, Petitioner is not entitled to relief on his first claim.

In his second claim, Petitioner argues there was insufficient evidence to convict him of being a felon-in-possession, as none of his prior convictions were felonies as that term is used in Mich. Comp. Laws § 750.224f(5) and (6). The state court rejected Petitioner's claim because his trial counsel had stipulated that he was ineligible to possess a firearm. *Jackson*, 2011 WL 192390, at *8.

The Court finds Petitioner's argument unavailing. "Every federal appellate court that has addressed the issue has held that by entering into the stipulation, a criminal defendant waives his right to assert the government's burden of presenting evidence to the jury on the stipulated elements of the criminal offense, 'including a reading of the stipulation itself.'" *Mattox v. Davis*, 549 F. Supp. 2d 877, 909 (W.D. Mich. 2008) (quoting *United States v. Harrison*, 204 F.3d 236, 240–41 (D.C. Cir. 2000)) (internal citations omitted). Petitioner's stipulation that he was ineligible to possess a firearm waived his right to contest the sufficiency of the evidence on this element of the felon-in-possession offense. *Id.* at 910. Accordingly, the state court decision on this issue was not contrary to, or an unreasonable application of, Supreme Court holdings. *See id.*

### B. Claims Two, Four, Five and Six: Ineffective Assistance of Counsel, and the Due Process Clause and Ex Post Facto Clause

For clarity, the Court will examine Petitioner's second, fourth, fifth and sixth

claims together.

In his second and fifth claims, Petitioner argues that trial counsel was ineffective for stipulating that he was ineligible to possess a firearm, because his prior convictions were not felonies as used in Mich. Comp. Laws § 750.224f(5) and (6). The Michigan Court of Appeals found this argument unconvincing:

> Defendant had several prior convictions including a conviction for attempting to resist and obstruct an officer. Although defendant argues that this attempt was not a felony because the attempt statute provides that it is punishable by 2 years in prison, see MCL 750.92(3), MCL 750.224f(5) defines a felony to include an attempt to commit a felony that is itself punishable by 4 or more years. Thus, whether an attempt constitutes a felony must be ascertained by reference to the underlying felony, not the statute providing penalties for attempting to commit an offense. The offense of resisting and obstructing is generally punishable by imprisonment for not more than 2 years. MCL 750.479(2). However, if the violation causes an injury requiring medical attention, it is punishable by imprisonment for not more than 4 years. MCL 750.479(3). If the violation caused a serious impairment of body function or death, the defendant may be imprisoned for up to 10 years or 20 years respectively. MCL 750.479(4) and (5). Thus, an attempt to commit the offense prohibited under MCL 750.479 can constitute a felony within the meaning of MCL 750.224f(5), if the defendant attempted to resist and obstruct causing bodily injury requiring medical treatment, serious impairment of body function, or death.
>
> In this case, defendant notes that he was sentenced under MCL 750 .92(3), so the underlying offense had to be subject to imprisonment for less than five years. But a felony under MCL 750.224f(5) is any crime punishable by 4 years or more. So the fact that defendant was ultimately sentenced under MCL 750.92(3) does not preclude the possibility that defendant's underlying crime constituted a felony within the meaning of MCL 750.224f(5). Given that defendant was

originally charged with resisting and obstructing as well as attempting to disarm an officer, it is possible that the prosecution could have presented evidence that defendant attempted to assault an officer and that when he did so he had the intent to physically injure the officer. Such an attempt would constitute a felony within the meaning of MCL 750.224f(5) and, because it includes an element of physical force against another, it would be a specified felony under MCL 750.224f(6). Given defendant's record, defendant's trial counsel might reasonably have concluded that it was best to stipulate to this element rather than invite the prosecutor to present evidence concerning the circumstances involved in the prior conviction that might be more prejudicial to defendant.

Defendant's trial counsel's stipulation that defendant was ineligible to possess a firearm under MCL 750.224f was sufficient to support his conviction and defendant has not shown that this decision fell below an objective standard of reasonableness.

*Jackson*, 2011 WL 192390, at *8–9 (internal citations omitted).

To show the denial of effective assistance of counsel under the Constitution, defendants must satisfy a two prong test. First, defendants must demonstrate that, considering the circumstances, "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. at 689. In other words, a petitioner must overcome the presumption that the challenged action might be sound trial strategy. *Id.*

Second, a petitioner must show that counsel's performance prejudiced his defense. *Id*. at 687. To demonstrate prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 101, 112 (2011)). "*Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." *Wong v. Belmontes*, 558 U.S. 15, 27 (2009). *Strickland* also applies to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F. 3d 602, 617 (6th Cir. 2005).

Moreover, on habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether [it] was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (alterations in original) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. Indeed, "because the

*Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to 28 U.S.C. § 2254(d)(1), a "doubly deferential judicial review" applies to a habeas petitioner's *Strickland* claim. *Id.* Thus, on habeas review, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland*'s high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Criminal defendants in federal court should be allowed to stipulate to felony-convict status without specifically identifying the nature and type of their felony conviction. *See, e.g., Old Chief v. United States*, 519 U.S. 172, 191–92 (1997). This type of stipulation is allowed "when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction." *Id.* at 174. Michigan permits a similar procedure. *See People v. Mayfield*, 221 Mich. App 656, 562 N.W. 2d 272, 275 (1997).

Moreover, "factual stipulations to elements of a crime are often the product of a sound trial strategy." *United States v. Monaghan*, 409 F. App'x 872, 877 (6th

Cir. 2011). "For example, where a prior felony conviction is an element of the offense, a sound strategy may be to stipulate to the existence of the conviction rather than allow the jury to hear details about the earlier crime." *Id.* (internal citations omitted).

Petitioner has not overcome the presumption that counsel's stipulation was "the product of a sound trial strategy." *See id.* He argues that his prior conviction for attempted resisting and obstructing a police officer cannot qualify as a predicate felony because it was a two-year misdemeanor. Yet the state court concluded that as a matter of law his conviction could qualify as a predicate offense, because it was an attempt to commit a felony. As this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," the Court must reject Petitioner's ineffective assistance of trial counsel claim. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005). The state court determined Petitioner's conviction for attempted resisting and opposing a police officer could serve as a predicate offense for his felon in possession of a firearm conviction, and this Court must defer to the state-court's finding that Petitioner's counsel was not ineffective for stipulating that Petitioner was ineligible to possess a firearm. *Hodge v. Haeberlin*, 579 F.3d 627, 648–49 (6th Cir. 2009).

In his fourth claim Petitioner argues that because he was not convicted of a felony, his felon in possession of a firearm conviction violates the Ex Post Facto Clause and the Due Process Clause. Specifically, Jackson argues that the predicate offense for his felon in possession conviction—attempted resisting and obstructing a police officer—and the offense's completed charge were misdemeanors. He contends that two years after his conviction, Michigan amended the relevant statute to make resisting and obstructing a police officer a four-year felony, where the officer suffered bodily injury and needed medical care. In other words, according to Petitioner, only after his conviction did his crime become a felony. Petitioner posits then that the state court retroactively applied the amended statute in concluding his conviction constitutes a predicate offense, and thus, violated the Due Process Clause and Ex Post Facto Clause.

This argument lacks merit. The Court will first address Petitioner's challenge based on due process. The Due Process Clause "provides a means by which to challenge a judicial decision on ex-post-facto grounds." *Ruhlman v. Brunsman*, 664 F.3d 615, 620 (6th Cir. 2011). Its protections are based on "'concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct.'" *Id.* (quoting *Rogers v. Tennessee*, 532

U.S. 451, 456, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001)). The crucial inquiry for a court assessing a due process challenge is "whether [a judicial] decision is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Id.* (quoting *Rogers*, 532 U.S. at 462).

Here, Petitioner's complaint is not that the state court has applied the law in an unforeseeable manner. *See, e.g., Bouie v. City of Columbia*, 378 U.S. 347, 354, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964) (invalidating state court decision regarding a statute which "prohibited entry upon the lands of another . . . after notice from the owner or tenant prohibiting such entry," as court applied statute to persons who were not prohibited from entering but had refused to leave; court had previously only applied the statute to persons who had notice that they could not enter. (internal citations omitted)). Rather, Jackson is contesting legislative action which he believes unlawfully transformed his misdemeanor conviction into a felony. As Jackson's complaint does not address a judicial decision, the Due Process Clause cannot provide him relief. *See Ruhlman*, 664 F.3d at 619 ("It is well established that the *Ex Post Facto* Clause 'does not of its own force apply to the Judicial Branch of government.'" (quoting *Marks v. United States*, 430 U.S. 188, 191, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977))). Therefore, Jackson's fourth claim fails as it relates to the Due Process Clause.

Petitioner's challenge under the Ex Post Facto Clause also fails. The *Ex Post Facto* Clause prohibits state legislatures from retroactively altering the definition of crimes. *O'Neal v. Bagley*, 743 F.3d 1010, 1015 (6th Cir. 2013). Put another way, it "prohibits the legislative enactment of any law that, *inter alia*, 'changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'" *Ruhlman*, 664 F.3d at 619 (quoting *Rogers*, 532 U.S. at 456). "'[T]he focus of the ex post facto inquiry,' however, 'is not whether a legislative change produces some ambiguous sort of 'disadvantage' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which the crime is punishable.'" *Doe v. Bredesen*, 507 F.3d 998, 1003 (6th Cir. 2007).

In this case, Jackson contests a "recidivism statute," i.e. a statute that "provide[s] enhanced penalties for previously convicted persons." *United Stated v. Hardeman*, 704 F.3d 1266, 1268 (9th Cir. 2013). Yet it is well settled that such statutes do not violate the Ex Post Facto Clause. *Id.* As the Ninth Circuit detailed in *Hardeman*:

> The Supreme Court has long held that recidivism statutes do not violate the Ex Post Facto Clause because the enhanced penalty punishes only the latest crime and is not retrospective additional punishment for the original crimes. When a defendant is given a higher sentence under a recidivism statute[,] . . . 100% of the punishment is for the offense of conviction. None is for the prior

convictions or the defendant's status as a recidivist.

*Id.* (internal citations and quotations omitted).

Here, the state legislature did not violate the Ex Post Facto Clause when it made Petitioner's attempted resisting and obstructing a police officer conviction a predicate offense of a felony in possession conviction; the state legislature did not add new penalties to Petitioner's prior conviction.  Rather, it enhanced a felon in possession conviction, and this enhancement was the sole punishment for his conviction.  *See, e.g., United States v. Glover*, 153 F.3d 749, 757–58 (D.C. Cir. 1998) (holding a statute did not violate the Ex Post Facto Clause where it construed as a felony the defendant's prior misdemeanor convictions in state court; defendant's federal convictions did not add a penalty for prior crimes, but prospectively defined new, more drastic consequences if defendant committed additional crimes).  As Petitioner's felony in possession conviction does not offend the Due Process Clause or Ex Post Facto Clause, Petitioner is not entitled to relief on his fourth claim.

For his sixth claim Petitioner contends that his appellate counsel was ineffective for failing to raise his second, fourth, and fifth claims.  This argument fails.

The Sixth Amendment guarantees a defendant the right to effective

assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). This right does not, however, require that counsel raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Further, "[a]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims are meritorious, appellate counsel was not ineffective on Petitioner's direct appeal.

### C. Claim Three: Identification Testimony

Petitioner asserts the state trial court improperly admitted a police officer's testimony regarding Ms. Harsch's identification of Petitioner. The Court disagrees.

"Extrajudicial witness identifications are routinely used as substantive evidence of guilt." *Foxworth v. St. Amand*, 570 F.3d 414, 427 (1st Cir. 2009) (citing *Samuels v. Mann*, 13 F.3d 522, 527 (2d Cir. 1993); Fed. R. Evid. 801(d)(1)(C)). The evidence presented was sufficient to convict Petitioner despite Ms. Harsch's failure to identify Petitioner in court. "There is no requirement, either in the Constitution or in the usual rules that apply to the admission of evidence, that a witness who makes an extrajudicial identification must repeat the

identification in the courtroom." *Id.*; *see also Bugh v. Mitchell*, 329 F. 3d 496, 505–11 (6th Cir. 2003) (upholding admission of minor victim's out-of-court statements as a prior identification of petitioner under Ohio Evidence Rule 801(d)(1)(C), although "[victim] was not willing to testify about the statements at trial and did not remember having made them").

In addition, Ms. Harsch testified at trial and was subject to cross-examination regarding her identification of Petitioner. Therefore, Officer Peter's testimony was not hearsay under state evidence law, *see* MICH. R. EVID. 801(d)(1)(C), nor does this evidence violate the Confrontation Clause of the Sixth Amendment. *See United States v. Owens*, 484 U.S. 554, 560 (1988); *see also Greene v. Lafler*, 447 F. Supp. 2d 780, 793 (E.D. Mich. 2006) (examining prior identifications and concluding that "[b]ecause the declarants testified at trial and were subject to cross-examination on their identification of the petitioner, the statements are not hearsay under state evidence law."). Thus, Petitioner is not entitled to relief on his third claim.

## IV. Certificate of Appealability and *In Forma Pauperis* Request

The Court will deny Petitioner's request for a certificate of appealability and for leave to appeal *in forma pauperis*.

First, to obtain a certificate of appealability, a prisoner must make a

substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The required showing is "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.3, 103 S. Ct. 3383 (1983)). When a district court rejects a habeas petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULES GOVERNING SECTION 2254 CASES, R. 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated herein, the Court will deny Petitioner a certificate of appealability. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).

Second, the Court will deny Petitioner leave to appeal *in forma pauperis*, as an appeal would be frivolous. *Allen v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>Conclusion</u>

Based on the reasons discussed herein, the Court will DENY Jackson's

petition for a writ of habeas corpus, request for a certificate of appealability, and request for leave to appeal *in forma pauperis* [20].

     SO ORDERED.

Dated: November 8, 2017           /s/Gershwin A. Drain
                                        GERSHWIN A. DRAIN
                                        United States District Judge

## CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 8, 2017, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk